UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

RONNIE FRISKEY,                    )
                                   )
        Plaintiff,                 )          Civil Action No. 2:17-056-WOB
                                   )
v.                                 )
                                   )
ANTHONY J. BRACKE, et al.,         )          **MEMORANDUM OPINION**
                                   )              **AND ORDER**
        Defendants.                )
                                   )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of a motion for summary judgment filed

by Defendant, Anderson L. Muse.  [R. 59]  Plaintiff, Ronnie Friskey, has filed a response in

opposition to Muse's motion [R. 65] and Muse has filed a reply.  [R. 66]  Thus, this matter is fully

briefed and ripe for review.

However, in addition to filing a response to Muse's motion, Friskey has also filed a motion

to stay the Court's consideration of Muse's motion, claiming that he needs to obtain certain

documents in order to respond to Muse's motion for summary judgment.  [R. 61, referring to

documents requested at R. 62]  As the Court has previously indicated, Friskey's motion will be

construed as a motion for discovery pursuant to Fed. R. Civ. P. 56(d).  [R. 68]  Muse did not file

a response to this motion and the time for doing so has expired.  Accordingly, this matter is also

ripe for review.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Friskey is a federal prisoner currently incarcerated at the Medical Center for Federal

Prisoners ("MCFP")-Springfield located in Springfield, Missouri.  Proceeding without counsel,

Friskey previously filed a civil rights action pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1331, and

the doctrine announced in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) against multiple defendants, alleging that the Assistant United States Attorneys and state and federal law enforcement officers violated Friskey's constitutional rights in connection with his underlying criminal trial. [R. 2, 11, 13] Friskey filed multiple complaints alleging a variety of claims, including malicious prosecution, conspiracy to perpetrate prosecutorial misconduct, and unreasonable search and seizure. However, in March 2018, this Court dismissed the original and Second Amended complaints filed by Friskey in their entirety. [R. 33] The United States Court of Appeals for the Sixth Circuit affirmed in nearly all respects, but held that Friskey's original complaint [R. 2] adequately asserted a "tampering-with-evidence" claim against defendant Anderson Muse. [R. 44] Thus, after remand, Friskey's tampering-with-evidence (or fabrication of evidence) claim against Muse is the only claim currently pending before the Court.

## A.     Friskey's Criminal Trial

In March 2013, Friskey was charged in an Indictment issued by a Grand Jury sitting in the United States District Court for the Eastern District of Kentucky with one count of knowingly and intentionally manufacturing one hundred or more plants of marijuana in violation of 21 U.S.C. § 841(a)(1) (Count One) and one count of knowingly possessing a firearm in furtherance of the drug trafficking crime charged in Count One (specifically, a CN Romarm 5.45x39 millimeter rifle, bearing serial number 2-20294-09, hereinafter referred to as the "CN Romarm" rifle) in violation of 18 U.S.C. § 924(c)(1) (Count Two).[1] *United States v. Ronnie Friskey*, 2:13-cr-012-DLB-CJS-1

---

[1]Count Two of the Indictment originally charged Friskey with also possessing a second firearm in furtherance of drug trafficking activity, specifically a Glenfield Model 60 .22 caliber rifle, bearing serial number 71541200 (hereinafter referred to as the ".22 rifle"). *Id*. at R. 1. In addition, Count Two originally indicated that the CN Romarm rifle was an "AK47." *Id*. However, prior to trial, the Government made an oral motion to amend Count Two to delete the inclusion of the .22 rifle and to further delete the reference to the CN Romarm rifle as an "AK47." *Id*. at R. 144. Even so, counsel and the Court repeatedly continued to refer to the CN Romarm rifle as an "AK47" and

(E.D. Ky. 2016) at CR 1, 144, 154.[2]  Prior to trial, Friskey and the United States agreed to stipulate to the jury that: 1) Friskey "admits that he was knowingly and intentionally growing marijuana in the basement of his residence on November 13, 2012;" and 2) Friskey "admits that he knowingly possessed the CN Romarm 5.45x39 millimeter rifle, bearing serial number 2-20294-09, and a Glenfield Model 60 .22 caliber rifle, bearing serial number 71541200, found in his residence on November 13, 2012."  *Id.* at CR 144, 145.  Thus, the only issues for trial were "(1) the number of marijuana plants in the basement and (2) whether the firearms were possessed in furtherance of the marijuana manufacturing."  *United States v. Friskey*, 698 F. App'x 252, 254 (6th Cir.), *cert. denied,* 138 S. Ct. 404, 199 L. Ed. 2d 297 (2017).

During Friskey's criminal trial, Muse testified as both a fact and opinion witness.  *United States v. Ronnie Friskey*, 2:13-cr-012-DLB-CJS-1 (E.D. Ky. 2016) at CR 184, Trial Transcript, Testimony of Anderson Muse at p. 121-122, 124.[3]  As an opinion witness, Muse testified that, in the course of his experience investigating drug offenses, he was trained and regularly had experience regarding the use of firearms by individuals in furtherance of drug trafficking.  *Id.* at

Friskey's complaint refers to an "RN Romarm rifle."  [R. 2]  Although these terms are used interchangeably throughout the criminal record, for clarification, this Court will refer to the rifle as a "CN Romarm" rifle, consistent with the amendment made to Count Two of the Indictment.

[2] Because this Memorandum Opinion and Order necessarily cites repeatedly to the record in Friskey's criminal trial, the Court will use the abbreviation "R" to cite to the record in this case and the abbreviation "CR" to cite to the record in Friskey's criminal case, *United States v. Ronnie Friskey*, 2:13-cr-012-DLB-CJS-1 (E.D. Ky. 2016).

[3] Although Friskey's complaint [R. 2] and Response to Muse's motion for summary judgment [R. 65-1] quote extensively from the transcript from Friskey's criminal trial, Friskey does not provide the Court with the original pages of the transcript to which he cites as prepared by the Court Reporter.  However, the original transcript is available through the Court's CM/ECF system, *see United States v. Ronnie Friskey*, 2:13-cr-012-DLB-CJS-1 (E.D. Ky. 2016) at CR 183-185, and this Court may "take judicial notice of proceedings in other courts of record." *See Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 738 (6th Cir.1980); *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969).  *See also* Fed. R. Evid. 201(b)(2).  Accordingly, in the interest of accuracy, the Court will refer to the testimony referenced by Friskey as recorded in the official transcript from Friskey's criminal trial.

CR 184, p. 128. Muse further testified that, in determining whether a firearm is being used in furtherance of drug trafficking, he typically considers the location, type, and caliber of the firearm. *Id*. He also testified that in "grow houses" or "stash houses" where drugs are grown and the drugs and proceeds are kept, it is typical to see firearms, particularly rifles or assault rifles, that are kept for protection of the product and the cash proceeds. *Id*. at p. 156-158. Muse was then presented with the two guns that were found at Friskey's residence and had previously been introduced into evidence (the CN-Romarm rifle and the .22 rifle). *Id*. at p. 158-159. With respect to the differences between these two firearms, Muse testified:

> You can tell on this firearm here, obviously, if anyone's shot a .22 before, the rounds will go down here, which it takes this round. You have a scope, which kind of tells me if you're going to shoot at a target. Or if you're going to kill a squirrel or raccoon or whatever you're going to do, whatever you use, this is mainly what this type of gun is used for.

> And then you switch over to this firearm here. And as you can tell, this firearm will shoot 30 of these. You take that magazine, you insert the magazine into the gun, all you have to do is rack that one time and you're ready to shoot. *As you can tell on this weapon, there is no scope or anything on it.* It has a collapsible stop, it has a hand grip, which makes this an assault rifle. It has a front sight up here.

> So these guns here are mainly what we find consistently in grow houses and what we call stash houses where they keep the drugs and the money. These are used mainly for their protection. It's a very intimidating weapon. You may not have to shoot anybody with it. You may just have to pull it out and point it at them. It's a very intimidating weapon so there's a couple reasons why they have it.

*Id*. at p. 159 (emphasis added).

With respect to the CN-Romarm rifle, Muse was then asked on direct examination whether the "factors" of that firearm (the type of gun, where it was located, and the gun's magazines) were consistent with being used in furtherance of drug trafficking or consistent with a legitimate use, such as gun collecting or target shooting. *Id*. at p. 163. Muse responded, "With my training and experience, a firearm as the assault rifle right there is commonly used in large scale, like I said,

-4-

marijuana grows and stash houses as the form of protecting that investment they have, that huge drug operation that they're doing has to be protected some way and that is very consistent with what I've seen through my career." *Id*.

On cross-examination by Friskey's defense attorney, Muse was asked more specifically about the characteristics of guns (including semi-automatic, self-loading rifles that accept magazines) that are used for target shooting:

Q.  Fair enough.  Are you familiar with the fact that you can buy a -- what's a popular brand of rifle? I can't even think of one.  Are you familiar with the fact that you can buy AR15 type pattern rifles at a number of places?

A.  Yes, I'm familiar with that.

Q.  And they are extremely big sellers?

A.  They have been, yes, definitely recently.

Q.  And everybody who purchases those does not purchase them for any kind of bad intent, do they?

A.  No.

Q.  They're popular among people who like to go and shoot targets, for instance?

A.  Yes, I would say some people do.  The ones that I see go use those for targets, the gun is more elaborate, has a scope on it.  They have some different features on it so that they're more accurate when they're spending that much money shooting those type of rounds.

Q.  I wanted to ask you about that.  You mentioned a scope a couple times.  Why is it significant there is not a scope on the rifle?

A.  If you have a scope on the rifle, you're going to be a lot more accurate shooting the firearm.

Q.  Sure, I understand.

A.  Which if you're going to go target practicing, you're probably going to want be pretty accurate while you're shooting at the target.  I mean, you don't want to burn a bunch of rounds missing the target.

*Id*. at p. 170-71.

Defense counsel then introduced into evidence a picture taken by the government on the day of the search of Friskey's property and showed it to Muse. *Id*. at p. 172. Muse identified the picture as depicting the black luggage and the CN-Romarm rifle on the day that they were seized by the police at Friskey's residence.[4] Upon examining the picture, Muse testified that there appeared to be a collapsible bipod attached below the barrel of the gun. *Id*. at p. 173. He further testified that there appeared to be a scope attached to the top of the rifle. *Id*. at p. 174. When asked if he knew what happened to the scope, he testified that it would have been placed into evidence, but agreed that it was not on the rifle anymore. *Id*. Muse also agreed that what appeared to be a bipod handle had also been removed. *Id*. Muse then testified as follows:

 Q. If you take that rifle and you put a bipod on it and put a scope on it, would it have any utility as a target shooting rifle?

A. It would make it easier for you to be more accurate with that weapon, yes.

Q. Would that be more consistent with its use as a target shooting rifle, as opposed to something else?

A. You would be more accurate with that weapon with that on there, yes.

*Id*. at p. 175.

The jury convicted Friskey of manufacturing 100 plants or more of marijuana in violation of 21 U.S.C. § 841(a)(1) (Count One), but acquitted him of possession of a firearm in furtherance of a  drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count Two). *United States v. Ronnie Friskey*, 2:13-cr-012-DLB-CJS-1 (E.D. Ky. 2016) at R. 153. Friskey was sentenced to a

---

[4] The police were initially called out to Friskey's property in response to a 911 call reporting a suspicious person prowling around the property. *Id*. at CR 183, Trial Transcript, Testimony of Andrew Schierberg at p. 4. The CN-Romarm was found inside a black suitcase on the living room floor. *Id*. at p. 15.

term of imprisonment of 90 months on Count One, to be followed by a five-year term of supervised release. *Id*. at CR 163.

In the Pre-Sentencing Report ("PSR") prepared by the United States Probation Office, it was recommended that Friskey's sentence be enhanced by two-levels for possessing a gun in connection with a drug crime pursuant to U.S.S.G. 2D1.1(b)(1). *Id*. at CR 166, 190. During the sentencing hearing, the District Court and counsel discussed at length whether this two-level enhancement should be applied in light of the two guns that Friskey admitted were located at his residence, the CN-Romarm rifle and the .22 rifle. *Id*. at CR 190, p. 16- 24.[5] With respect to the .22-caliber rifle, the Court found that Friskey failed to rebut the presumption that the .22 rifle was possessed in connection with the offense, thus application of the two-level enhancement pursuant to § 2D.1.1(b)(1) was warranted. *Id*. However, with respect to the CN Romarm rifle, the District Court declined to find that Friskey's possession of the CN Romarm rifle warranted application of the § 2D1.1 enhancement, explaining that:

> Although the officers found loaded magazines for the military-type assault rifle, they were not found attached to the rifle. And given the inability to say where that rifle was found or was located before Devin Mason moved it, the Court will not make any findings regarding that rifle or its magazines. *That is especially true given the testimony elicited on cross-examination by defense counsel that the rifle likely had a scope, making it more likely, according to Agent Muse, all else being equal, to being used for target practice.* So the Court's limiting its finding on the 2D1.1(b)(1) enhancement to the .22 caliber rifle, not the assault rifle.

---

[5]Section 2D1.1(b)(1) of the Sentencing Guidelines provides for a two-level sentencing enhancement for possession of a firearm in connection with a drug crime. U.S.S.G. 2D1.1(b)(1). As explained by the Sixth Circuit on Friskey's appeal, "[i]f the government establishes that the defendant possessed a weapon, a presumption arises that the weapon was connected to the offense." *United States v. Friskey*, 698 F. App'x 252, 257 (6th Cir.), *cert. denied,* 138 S. Ct. 404, 199 L. Ed. 2d 297 (2017) (quoting *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008). In order to rebut this presumption, "Friskey must present evidence, and not "mere argument," that it was "clearly improbable" that the firearm was connected to the crime." *Id*. However, "the Government has a far lighter burden of proof during sentencing than it does at trial, and its decision to remove the .22-caliber rifle from the indictment is therefore irrelevant in evaluating the district court's application of a § 2D1.1(b)(1) enhancement." *Id*. at 257-58.

*Id*. at p. 25-27.[6] Thus, the Friskey's sentence was not enhanced by his possession of the CN-Romarm rifle.

**B.    Friskey's "Tampering With Evidence" Claim Against Muse**

Friskey's complaint alleges that Muse conspired with the previously-dismissed defendants (including Kenton County Police Detectives and the Assistant United States Attorney prosecuting Friskey's criminal case) to violate Friskey's due process rights by removing the scope and the combination foregrip and bipod that had previously been attached to the CN Romarm rifle. [R. 2 at ¶¶ 15-16]  Friskey alleges that this was part of a "ploy" to persuade the jury that the rifle was used by Friskey to protect drugs and/or drug proceeds (rather than another purpose, such as target shooting), in order to wrongfully convict Friskey of using a firearm in the furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  [*Id*. at ¶ 17-19]  According to Friskey, because Muse had access to the CN Romarm rifle prior to its introduction into evidence at trial, he knew that it had been altered by the removal of the scope and foregrip.  [*Id*. at ¶¶ 20-22]  Friskey alleges that, as part of the "conspiracy," Muse (knowing that the CN Romarm had been altered prior to trial) offered testimony that the characteristics of the CN Romarm rifle that was seized at Friskey's residence were more consistent with the type of weapon found in drug "stash houses," and inconsistent with a rifle used for target shooting, because of the absence of a scope.  [*Id*. at ¶ 21-23]  Friskey further claims that this conspiracy was "revealed" during the cross-examination of

_____

[6] The Court specifically noted that, even if the Sixth Circuit held on appeal that the sentencing enhancements for the .22 caliber rifle and obstruction of justice were inappropriate, a sentence of 90 months would still be appropriate in light of the number of marijuana plants involved in Friskey's drug offense.  *Id*. at p. 48.  However, Friskey's conviction and sentence (including the application of the § 2D1.1(b)(1) enhancement) were affirmed on appeal.  *United States v. Friskey*, No. 16-6263, 698 F. App'x 252, 254 (6th Cir.), *cert. denied,* 138 S. Ct. 404, 199 L. Ed. 2d 297 (2017).

Muse by Friskey's counsel, when counsel showed Muse a picture of the rifle after it was seized, after which Muse agreed that the picture showed a scope and what appeared to be a collapsible bi-pod attached to the rifle. [*Id.* at ¶ 24] According to Friskey, this exchange amounts to an "admission" that Muse removed the attachments prior to trial "creating a ploy alongside his co-conspirators to deliberately convince the jury based on this false testimony and altered evidence, to convict [Friskey] of a crime (18 U.S.C. § 924(c))." [*Id.* at ¶ 27]

In support of his claims, Friskey points to testimony by Andrew Schierberg, which Friskey claims establishes that the rifle was transferred to Drug Enforcement Agency ("DEA") custody (the agency to which Muse was assigned) from the local law enforcement's custody after it was seized, to surmise that Muse had "direct control" over the rifle prior to the trial. [*Id.* at ¶¶ 20-22; R. 65-1 at p. 3-5] Friskey also alleges that the evidence seizure list prepared by the Kenton County Police Department shows that Muse seized the CN Romarm rifle during the search and seizure of Friskey's home and that the trial testimony "unequivocally support that he remained in control over the evidence long before the trial of March 28, 2016." [R. 2 at ¶ 22] From these conclusions, Friskey alleges that Muse "knowingly, willfully, and [wantonly] fabricated false testimony to support the altered evidence [referring to the allegedly altered CN Romarm rifle] which he knew was altered." [R. 2 at ¶ 22]

Muse has moved for summary judgment, arguing that he is entitled to judgment in his favor as a matter of law on Friskey's fabrication of evidence claim against him because: 1) Friskey cannot show that Muse fabricated any evidence against him; 2) Muse's trial testimony was not likely to affect the minds of the jury; 3) Muse has absolute immunity for his trial testimony; and 4) Friskey is judicially estopped from claiming that Muse intentionally fabricated evidence in light of his defense counsel's statements to the contrary during Friskey's criminal trial. [R. 59-1]

## II.     FRISKEY'S MOTION FOR DISCOVERY

Before turning to the merits of Muse's motion, the Court must first address Friskey's request that consideration of Muse's dispositive motion be stayed to permit him to request certain documents in discovery, which the Court has construed as a motion for discovery pursuant to Fed. R. Civ. P. 56(d).  [R. 61]  Rule 56(d) states as follows:

> **(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> **(1)** defer considering the motion or deny it;
>
> **(2)** allow time to obtain affidavits or declarations or to take discovery; or
>
> **(3)** issue any other appropriate order

Fed. R. Civ. P. 56(d).

The trial court's allowance of additional discovery under Rule 56(d) (formerly Fed. R. Civ. P. 56(f)) is discretionary.  *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 426 (6th Cir. 2009). "The affidavit required by [former] Rule 56(f) to support a request for additional discovery must indicate the need for discovery, what material facts may be uncovered, and why the information has not been previously discovered." *Id.* (citations omitted).  As the Sixth Circuit has explained:

> It is not an abuse of discretion for the district court to deny the discovery request when the party "makes only general and conclusory statements [in its affidavit] regarding the need for more discovery and does not show how an extension of time would have allowed information related to the truth or falsity of the [document] to be discovered." *Ironside v. Simi Valley Hosp.,* 188 F.3d 350, 354 (6th Cir.1999). It is also not an abuse of discretion to reject a Rule 56(f) affidavit as insufficient to support further discovery when the affidavit lacks "any details" or "specificity." *Emmons v. McLaughlin,* 874 F.2d 351, 357 (6th Cir.1989).

*Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004).

In his motion, Friskey refers to a list [R. 62] describing the following documents that he claims to need in order to respond to Muse's motion for summary judgment:

1.     Exhibits 1 and 2 entered from the defense in accordance with case number 2:13-CR-00012-DLB-CJS or more precisely two photographs size format in 8x11 and ½ as was introduced during the Plaintiffs criminal trial in full color.

2.     The full discovery information from criminal case number 2:13-CR-00012-DLB-CJS without the entire photograph array but to include Exhibits 1 and 2 mentioned above.

3.     Audio video recording of the trial pertaining to case number 2:13-CR-0012-DLB-CJS.

4.     The conduct reports of Anderson L. Muse's employment with the Kenton County Police Department/Independence, employment reports from the Drug Enforcement Agency as to conduct reports and or complaints or any other place of employment with law enforcement of any kind.

[R. 62 at p. 2-3]

However, Friskey does not offer any explanation as to how any of this information is necessary for him to present facts essential to justify his opposition to Muse's motion for summary judgment. Rather, his motion offers only the statement that "[t]hese documents are essential to this case and to respond to the Motion for Summary Judgment adequately." [R. 61] This conclusory statement fails to provide any insight regarding how the information that he wishes to seek is relevant to the issues raised by Muse's motion for summary judgment. Because Friskey fails to offer any explanation regarding why this information is needed to adequately respond to Muse's motion for summary judgment, he fails to show that he cannot oppose Muse's motion without taking the discovery he proposes. *United States v. One Harrington & Richardson Rifle*, 378 F.3d 533, 535 (6th Cir. 2004) (the affidavit must detail the discovery needed and demonstrate specific reasons why the non-movant cannot oppose the summary judgment motion without additional discovery).

Moreover, Friskey's claimed "need" for this information in order to adequately respond to Muse's motion is dubious. First, to the extent that he seeks trial exhibits and audio/video

recordings of the trial, Friskey clearly has access to the transcript from his trial, as he cites to it extensively in his pleadings. [*See* R. 2, 65-1] In addition, to the extent that he seeks this information to establish Muse's testimony regarding the significance of the presence of a scope and bipod on the rifle and/or his concession that, according to the pictures that were shown to Muse at trial, the rifle did, in fact, have a scope and bipod attached at the time it was seized, none of these facts are disputed by Muse. To the extent that Friskey seeks this information for some other reason, he fails to articulate what that purpose is and/or how it would refute Muse's motion for summary judgment. Finally, notwithstanding his claimed "need" for this information in order to respond to Muse's motion, he filed a 32-page response to Muse's motion [R. 65-1] in which he cites extensively to trial testimony, including references to exhibits introduced therein. At no point in his lengthy response does Friskey indicate that he could not adequately respond to any of the arguments set forth by Muse's motion because he had not taken discovery or, more specifically, because he did not have access to either documents from his trial or Muse's employment records. For these reasons, the Court will deny Friskey's motion for discovery. [R. 61]

### III.   MUSE'S MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure challenges the viability of another party's claim by asserting that at least one essential element of that claim is not supported by legally sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). A party moving for summary judgment must establish that, even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that the party is entitled to a judgment as a matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). The moving party does not need its own evidence to support this assertion but need only point to the absence of evidence

to support the claim. *Turner v. City of Taylor*, 412 F. 3d 629, 638 (6th Cir. 2005). The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994).

The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remains for trial. *Hunley v. DuPont Auto*, 341 F. 3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F. 2d 138, 143 (6th Cir. 1993) ("A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts."). However, if the responding party's allegations are so clearly contradicted by the record that no reasonable jury could adopt them, the court need not accept them when determining whether summary judgment is warranted. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

### A.     Fabrication of Evidence Claim

As previously noted, the only remaining claim in this lawsuit is Friskey's claim that Muse fabricated evidence in violation of Friskey's constitutional rights. [R. 44] To be sure, the exact contours of Friskey's fabrication of evidence claim are not entirely clear, as the allegations of his complaint [R. 2] are somewhat rambling, vague, and conclusory in nature. However, construing Friskey's fabrication of evidence claim broadly, it essentially has two separate components: 1) that Muse fabricated evidence by altering the rifle by removing the scope and bi-pod before the trial; and 2) that Muse testified falsely regarding the condition of the rifle and/or his opinions regarding its use. According to Friskey, Muse fabricated this evidence and testified falsely in an attempt to

persuade the jury to convict Friskey of Count Two of the Indictment, using the CN-Romarm rifle in the furtherance of his drug activities. [R. 2]

1. Muse is Entitled to Absolute Immunity for his Trial Testimony

With respect to Muse's trial testimony, Muse is correct that he is protected by absolute immunity from liability under 42 U.S.C. § 1983. "It is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings." *Spurlock v. Satterfield*, 167 F.3d 994, 1001 (6th Cir. 1999). Indeed, "[i]n *Briscoe v. Lahue,* 460 U.S. 325 (1983), the Supreme Court concluded that 'all witnesses—police officers as well as lay witnesses—are absolutely immune from liability based upon their testimony in judicial proceedings.'" *Alioto v. City of Shively, Ky.*, 835 F.2d 1173, 1174 (6th Cir. 1987) (quoting *Briscoe*, 460 U.S. at 328). *See also Gregory v. City of Louisville*, 444 F.3d 725, 738 (6th Cir. 2006) (recognizing that testimony at adversarial judicial proceedings is "the most historically grounded" of the functions that "are integral to the functioning of our adversarial judicial system" which merit absolute immunity shielding officials from § 1983 liability) (citations omitted). Thus, Muse is entitled to summary judgment in his favor on Friskey's claim that Muse "falsified evidence" by testifying falsely at Friskey's criminal trial.

However, the Sixth Circuit has also consistently distinguished between the testimony that is offered at trial (and which is shielded by absolute immunity) and investigatory acts committed prior to trial (which are not). In *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006), the Court recognized that the Sixth Circuit, like other Circuit Courts of Appeals, had previously held that "absolute testimonial immunity does not 'relate backwards' to 'protect [a defendant] for any activities he allegedly engaged in prior to taking the witness stand for his [ ] testimony.'" *Gregory*, 444 F.3d at 738 (quoting *Mastroianni v. Bowers*, 160 F.3d 671, 677 (11th Cir. 1998)) (citing

*Spurlock*, 167 F.3d at 1001). The Court concluded that the pretrial creation of false investigatory notes were "acts of fabrication [that] would be pretrial, non-testimonial acts for which the officers are not entitled to absolute immunity." *Gregory*, 444 F.3d at 741. Thus, "absolute immunity for testimony at trial does not 'relate back' to shield pretrial, nontestimonial acts such as fabrication of evidence." *Id*. at 742. Accordingly, to the extent that Friskey alleges that Muse knowingly altered the rifle to remove the scope and bipod before it was introduced into evidence, these actions would not be protected by absolute immunity.

2.       Friskey's Claim that Muse Altered the CN-Romarm Rifle Prior to Trial

In his motion for summary judgment, Muse argues that he is entitled to judgment in his favor as a matter of law because Friskey cannot show that Muse fabricated any evidence. [R. 59-1 at p. 9-10; R. 66] Specifically, he argues that the only support for Friskey's claim that Muse is the individual who altered the CN-Romarm rifle is Friskey's allegation in his complaint that Muse "admitted to removing the attachment" at trial, an allegation made with no citation to the record and that is, in fact, directly contradictory to the testimony at Friskey's criminal trial. [R. 66] Although Muse also submits a sworn declaration in support of his motion in which he repeatedly denies making any alterations to the CN-Romarm rifle,[7] for the Court's purposes in considering

---

[7] Muse's declaration states that, while he did assist other law enforcement officers with collecting evidence while executing a search warrant on Friskey's residence on November 13, 2012, he did not transport the CN-Romarm rifle from Friskey's residence to the Kenton County Police Department's property room, nor did he have access to Kenton County's property room at that time (nor has he had access since). [R. 66-2 at ¶¶ 1-2] He further states, "I did not alter [the CN-Romarm] rifle or remove a sight-scope, bipod, or any other apparatus from the rifle at any time before, during or after it was seized from the Friskey residence." [*Id*. at ¶ 3] He states that he took an oath to serve in the Investigative Support Section of the DEA on November 16, 2012. [*Id*. at ¶ 4] He then explains that on May 7, 2014, he (along with DEA TFA Boyd) executed a seizure warrant for the CN-Romarm rifle (as well as the .22 caliber rifle and other magazines and ammunition) at the Kenton County Police Department. [*Id*. at ¶¶ 5-6] He then affirmatively states that he "did not alter the [CN-Romarm] rifle or remove a scope, bipod, or any other apparatus from the rifle at any time before, during or after executing the seizure warrant on May 7, 2015" nor "at

-15-

his motion for summary judgment, the Court need only consider Muse's argument that there is an absence of probative evidence supporting Friskey's claim that Muse altered the rifle at some point between the time it was seized from his property until the time it was introduced as evidence in his criminal trial. *Turner*, 412 F.3d at 638. The burden then shifts to Friskey to point to some probative evidence to support his fabrication of evidence claim against Muse. *Lansing Dairy, Inc.*, 39 F.3d at 1347.

Turning to the elements of a fabrication of evidence claim, the Sixth Circuit has explained that "[t]he Due Process Clause of the Fourteenth Amendment is…violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury." *Jackson v. City of Cleveland*, 925 F.3d 793, 815-816 (6th Cir. 2019) (quotations and citations omitted). *See also Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017). In addition, as the United States Supreme Court has explained, a fabrication of evidence claim requires a plaintiff "to show that the criminal proceedings against him – and consequent deprivations of his liberty – were caused by [Defendant's] malfeasance in fabricating evidence." *McDonough v. Smith*, 139 S. Ct. 2149, 2156, 204 L. Ed. 2d 506 (2019).

a. <u>Friskey Fails to Show that the Allegedly Fabricated Evidence Caused Him to be Deprived of Liberty</u>

In this case, there is the added wrinkle that, although Friskey was convicted of manufacturing more than 100 marijuana plants (a charge that was not dependent upon his possession of the CN-Romarm rifle), Friskey was acquitted of Count Two of the Indictment, charging him with possession of the CN-Romarm rifle in the furtherance of his drug activities. As the Sixth Circuit notes in its Order remanding this case back to this Court, the Sixth Circuit "has

---

any time during which the CN-Romarm rifle was in DEA custody or anytime thereafter." [*Id.* at ¶¶ 7-8]

not yet directly resolved the question of whether an acquittal extinguishes a fabrication-of-evidence claim." [R. 44 at p. 7, n. 1]  In *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997), the Sixth Circuit suggested that the plaintiff (who had ultimately been acquitted) was not estopped from pursuing a fabrication of evidence claim, notwithstanding a state court's prior finding that probable cause existed for her arrest.  *Id*. at 872.  However, the Court offered no further analysis of the viability or requirements of such a claim.

In fact, there is a split amongst the Circuit Courts of Appeal regarding the viability of a fabrication of evidence claim after an acquittal.  For example, in *Saunders-El v. Rohde*, the United States Court of Appeals for the Seventh Circuit recognized that a plaintiff's claim based on allegations that "the prosecutor and investigators conspired 'to manufacture false evidence and bring trumped-up charges,'" was foreclosed by the plaintiff's acquittal.  *Saunders-El v. Rohde*, 778 F.3d 556-560 (7th Cir. 2015) (quoting *Alexander v. McKinney*, 692 F.3d 553, 554 (7th Cir. 2012).  *See also Massey v. Ojaniit*, 759 F.3d 343 (4th Cir. 2014) ("Fabrication of evidence alone is insufficient to state a claim for a due process violation; a plaintiff must plead adequate facts to establish that the loss of liberty—i.e., his conviction and subsequent incarceration—resulted from the fabrication.") (citations omitted).

In contrast,  in *Black v. Montgomery Cty.*, 835 F.3d 358, 371 (3d Cir. 2016), *as amended* (Sept. 16, 2016), the United States Court of Appeals for the Third Circuit held that "an acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged."  The Court explained that its prior precedent required a "reasonable likelihood" that a defendant would not have been convicted absent the fabricated evidence, a standard "merely based on principles of

causation." *Id.* at 371-372 (citing *Halsley v. Pfeiffer*, 759 F.3d 273, 294 n. 19 (3d Cir. 2014)). According to the Court, this "reasonable likelihood" standard "simply requires that a plaintiff draw a 'meaningful connection' between her particular due process injury and the use of fabricated evidence against her." *Id.* at 372 (citations omitted). *See also Cole v. Carson*, 802 F.3d 752, 767-68 (5th Cir. 2015), *vacated on other grounds* 137 S. Ct. 491 (2016); *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000).

In *Black*, the Third Circuit further cautioned that, despite the possibility of a fabrication of evidence claim after a defendant's acquittal:

> [a]side from the causation requirement, there are other hurdles facing a plaintiff alleging a due process violation for fabrication of evidence. For instance, as we cautioned in *Halsey*, a civil plaintiff's fabricated evidence claim should not survive summary judgment unless he can demonstrate that the fabricated evidence "was so significant that it could have affected the outcome of the criminal case." *See Halsey*, 750 F.3d at 295. In addition, there is a notable bar for evidence to be considered "fabricated." We have noted that "testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Id.* There must be "persuasive evidence supporting a conclusion that the proponents of the evidence" are aware that evidence is incorrect or that the evidence is offered in bad faith. *Id.* *For these reasons, we reiterate that "we expect that it will be an unusual case in which a police officer cannot obtain a summary judgment in a civil action charging him with having fabricated evidence used in an earlier criminal case."*

*Black*, 835 F.3d at 372 (emphasis added).

Consistent among the courts that recognize that a fabrication of evidence claim may survive a criminal defendant's acquittal is that the plaintiff asserting the claim must show some sort of connection between the alleged fabrication of the evidence and a due process "injury." *See Black*, 835 F.3d at 371-72. *See also Zahrey*, 221 F.3d at 349 (explaining that the constitutional right at issue "is appropriately identified as the right not to be deprived of liberty *as a result* of the fabrication of evidence by a government officer acting in an investigating capacity. Understood this way, we conclude that the right at issue is a constitutional right, provided that the deprivation

of liberty of which [the plaintiff] complains *can be shown to be the result* of [the defendant's] fabrication of evidence.") (emphasis added). A causation requirement is also consistent with the United States Supreme Court's decision in *McDonough*, which found that, like malicious prosecution (which the Court found was the most analogous common-law tort), the tort of fabrication of evidence requires the plaintiff "to show that the criminal proceedings against him – and consequent deprivations of his liberty – *were caused by* [Defendant's] malfeasance in fabricating evidence." *McDonough*, 139 S.Ct. at 2156 (emphasis added).

Thus, assuming (without deciding) that Friskey's fabrication of evidence claim is still viable after his acquittal, he must still point to some causal connection between the allegedly fabricated evidence and consequent deprivations of his liberty resulting from the criminal proceedings against him. This Friskey simply does not do, as Friskey fails to point to any specific deprivation of his liberty at any point during the criminal proceedings (either resulting from his arrest, his criminal prosecution, or his sentence imposed after his conviction for drug manufacturing) caused by the alleged alterations to the rifle.

Nor could he, as any "deprivation of liberty" derived from Friskey's arrest and/or prosecution could not have been "caused" by the alleged alterations. First, Friskey admitted prior to trial that he was growing marijuana in his basement and that he possessed the CN-Romarm rifle; he only disputed the extent of his growing operation and the purpose for his possession of the firearm. *United States v. Ronnie Friskey*, 2:13-cr-012-DLB-CJS-1 (E.D. Ky. 2016) at CR 144, 145. Moreover, the Sixth Circuit has already found that probable cause unquestionably existed for Friskey's arrest and prosecution arising from the other firearm, ammunition, marijuana plants, and cash that were found at his residence. Specifically, in its analysis rejecting Friskey's failed malicious prosecution claim, the Sixth Circuit explained:

Friskey failed to sufficiently allege that there was a lack of probable cause to prosecute him. For one, Friskey was tried after being indicted by a grand jury, which is ordinarily sufficient to establish the existence of probable cause. *See Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015); *but see King v. Harwood*, 852 F.3d 568, 588-89 (6th Cir. 2017) (discussing how a plaintiff may overcome the presumption that a grand jury indictment establishes probable cause), *cert. denied*, 138 S. Ct. 640 (2018). Moreover, even accepting Friskey's contention that the defendants attempted to manipulate court proceedings, there was more than sufficient evidence to establish the existence of probable cause to prosecute Friskey. Probable cause to initiate a prosecution exists when the "facts and circumstances [are] sufficient to lead an ordinarily prudent person to believe the accused was guilty of the crime charged." *Webb*, 789 F.3d at 660 (alteration in original) (quoting *MacDermid v. Discover Fin. Servs.*, 342 F. App'x 138, 146 (6th Cir. 2009)). Following the execution of the search warrant at Friskey's home, law enforcement officers found, in addition to the AK-47 rifle that formed the basis for Friskey's firearm charge, a .22 caliber rifle, ammunition, 571 marijuana plants, equipment for cultivating marijuana, and $8015. *See Friskey*, 698 F. App'x at 254. An ordinarily prudent person could determine from this evidence that Friskey possessed the AK-47 rifle to protect a marijuana-cultivation operation and that he therefore violated § 924(c)(1). *See* 18 U.S.C. § 924(c)(1)(A).

*Friskey v. Bracke, et al.,* No. 18-5383 (6th Cir. Nov 15, 2018) at p. 6. [*See also* R. 44, Order/Judgment of USCA].

It is true that the Sixth Circuit recognized in *Stemler* that a fabrication of evidence claim "does not require a conclusion that the state did not have probable cause to prosecute the claimant." *Stemler*, 126 F.3d at 872. However, this does not require the Court to ignore as irrelevant Friskey's admitted drug manufacturing activities and the abundance of other evidence found with the CN-Romarm rifle when evaluating whether the alleged post-seizure/pre-trial alterations to the rifle "caused" Friskey to be deprived of liberty by virtue of his arrest and prosecution. Friskey does not argue that, absent the alleged alterations to the rifle, he would have never been arrested or prosecuted. Nor could he credibly do so, in light of the abundance of evidence against Friskey (*i.e.*, the .22 rifle, the ammunition, 571 marijuana plants, equipment for cultivating marijuana, and $8015), his own admissions to criminal activity prior to trial, and the fact that he was, indeed, convicted of manufacturing 100 plants or more of marijuana, a charge that was independent of his

possession of the CN-Romarm rifle. In these circumstances, it simply cannot be said that the allegedly fabricated evidence (the alterations made to the rifle prior to trial) "caused" his arrest or prosecution, as he certainly would have been arrested and prosecuted for his significant drug activities without it.

Nor was Friskey's sentence enhanced by his possession of the CN-Romarm rifle, as the Court declined to make any findings regarding the CN-Romarm rifle, noting (somewhat ironically in retrospect, in light of Friskey's current claim that Muse fabricated his testimony), that "given the testimony elicited on cross-examination by defense counsel that the rifle likely had a scope, making it more likely, according to Agent Muse, all else being equal, to being used for target practice." *United States v. Ronnie Friskey*, 2:13-cr-012-DLB-CJS-1 (E.D. Ky. 2016) at CR 190, Sentencing Transcript at p. 27. For all of these reasons, the Court finds that Friskey cannot establish that any deprivations of his liberty – whether suffered as a result of his arrest, his criminal prosecution, and/or an enhancement of his sentence – were "caused" by the alterations to the CN-Romarm rifle prior to its introduction into evidence at his criminal trial.

b. Friskey Fails to Point to Any Probative Evidence Supporting His Conclusory Allegation that Muse Altered the CN-Romarm Rifle

As a general matter, personal liability in a § 1983 action hinges upon the defendant official's personal involvement in the deprivation of the plaintiff's civil rights. *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003); *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981). Thus, for personal liability to be imposed upon Muse, Friskey must establish that Muse was personally involved in the deprivation of Friskey's civil rights. In addition, with respect to Friskey's fabrication of evidence claim against Muse, this claim requires evidence that Muse "knowingly fabricated" evidence against Friskey. *Jackson*, 925 F.3d at 815-816. Muse's motion argues that he is entitled to summary judgment in his favor on Friskey's claim because there is a

complete lack of any evidence that Muse knowingly fabricated evidence against Friskey by removing the scope and/or bipod from the CN-Romarm rifle.

In his response, Friskey fails to point to any probative evidence in support of his claims. Rather, Friskey broadly claims (without actually citing to any evidence) that "all the evidence points to Muse having control over the two rifles before trial and Muse's recent declaration creates a conflict with the testimony of Mr. Schierberg during [Friskey's] criminal trial that he did not change the evidence and that the inventory list was fully inclusive of everything taken from [Friskey's] home." [R. 65-1 at p. 23-24] Friskey further claims that "Schierberg states that the rifles were transferred to DEA custody and Muse admits he was the Agent that took them under his control and he was also the person in control of bringing these rifles to the court room just prior to [Friskey's] trial." [*Id*. at p. 24] However, the "evidence" referred to by Friskey consists of only to his own allegations, conclusions and speculation drawn from Friskey's interpretation of the trial testimony, which is insufficient to withstand a motion for summary judgment. Rather, "[i]n order to survive a motion for summary judgment, the non-moving party must be able to show 'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'" *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (quotations and citations omitted). *See also Maki v. Laakko*, 88 F.3d 361, 364 (6th Cir. 1996) ("To preclude summary judgment, the nonmoving party must present evidence, beyond his pleadings and his own conclusory statements, to establish the existence of specific triable facts.") (citation omitted); *Perry v. Agric. Dep't*, No. 6: 14-168-DCR, 2016 WL 817127, at *10 (E.D. Ky. Feb. 29, 2016) ("[C]onclusory allegations are not evidence and are not adequate to oppose a motion for summary judgment."). Friskey completely fails to sustain this burden.

Moreover, a closer look at the trial testimony cited by Friskey shows that the testimony to which Friskey cites is either mischaracterized or it simply does not have the significance imputed to it by Friskey. For example, Friskey claims that the testimony of Kenton County Police Officer Andrew Schierberg "firmly established" for the jury "that evidence was in no way tampered with." [R. 65-1 at p. 12] He further claims that Schierberg's testimony led the jury to believe that, when the CN-Romarm rifle was introduced at trial, it was in the same condition as when it was seized from Friskey's home, which Friskey then claims "creates a counterclaim" to Muse's Declaration that he did not alter the CN-Romarm rifle. [*Id*. at p. 12-13; R. 59-2] Friskey also points to Schierberg's general testimony regarding the creation of an evidence inventory list and then claims (without citing to any particular testimony) that "Mr. Schierberg then testifies that Agent Muse was in fact the individual who took control over the evidence in dispute before trial." [R. 65-1 at p. 17]

However, the testimony cited by Friskey simply does not support his broad conclusions and, in some instances, directly contradicts his claims. Schierberg did testify that the CN-Romarm was in "law enforcement's" custody from the time it was seized on November 13, 2012, until the time it was introduced at trial in March 2016, but his testimony in no way suggests that it was under Muse's exclusive "control" during this time, nor does it lend any support to Friskey's claim that Muse removed the scope and bipod from the rifle. *United States v. Ronnie Friskey*, 2:13-cr-012-DLB-CJS-1 (E.D. Ky. 2016) at CR 183, Trial Transcript, Testimony of Andrew Schierberg at p. 15-16. Schierberg testified that his role on the day of the search of Friskey's property was to take photos of the house, assist in the initial "walk around" to identify items of potential interest to the police, and then to serve "as the person sort of collecting all the evidence, logging it, and then taking it back to our office." *Id*. at p. 5. He also testified that "[a] lot of times on crime

scenes, I end up being the person logging evidence because it's ultimately coming into the property room that I manage." *Id*. at p. 6. In response to a question whether he did anything to change the items that he took in the time he took them from the scene to the property room (other than just transporting them from one spot to another), he answered, "No. All we do is transfer them from the scene to our property room, where they're entered into the location and left there until needed." *Id*. at p. 6.

According to Schierberg, in this case, he personally brought the evidence (including the CN-Romarm rifle) directly to the Kenton County Police Department's property room. *Id*. at p. 6. At that time, Schierberg, the unidentified "secondary person to the property room," and the chief of police had access to the Kenton County Police Department's property room. *Id*. at p. 6-7. The CN-Romarm then remained in the Kenton County Police Department's property room until it was transferred to DEA custody (the agency to which Muse was assigned) from Kenton County's custody pursuant to a warrant executed by Agent Muse and DEA TFA Boyd on May 7, 2015, over three and a half years later. *Id*. at p. 16. [*See also* R. 59-2, Declaration of Anderson L. Muse, Exhibit B] Friskey repeatedly claims that the CN-Romarm rifle was in Muse's "control," presumably in an attempt to suggest that Muse is the only individual who had access to the CN-Romarm rifle from the time it was seized until the time it was introduced at trial, thus inferring that it must have been Muse who altered the rifle by removing the bipod and scope. However, this inference is simply unsupported by the testimony to which Friskey cites. In fact, the CN-Romarm rifle was located in the Kenton County Police Department's property room for *over three years* before it was transferred to DEA custody and there is no evidence to suggest that Muse even had access to it at all during this time, nor that it was ever in Muse's exclusive control. And, even if

Muse was one of the officers with access to the CN-Romarm rifle prior to its introduction into evidence at trial, it by no means follows that Muse removed the bipod and scope.

In addition, in his complaint, Friskey repeatedly alleges that Muse testified that he seized the CN Romarm rifle from Friskey's home, again in an apparent effort to suggest that Muse may have removed the bipod and scope at the time that it was seized.  [R. 2 at ¶ 31]  In fact, Muse specifically testified that, on the day the weapons were seized from Friskey's home, Muse did *not* remove the CN-Romarm rifle from the bag in which it was found, nor did he clear the weapon at the scene.  *United States v. Ronnie Friskey*, 2:13-cr-012-DLB-CJS-1 (E.D. Ky. 2016) at CR 184, Trial Transcript, Testimony of Anderson Muse at p. 180.[8]  Rather, as previously noted, Schierberg testified that he was the officer who was assigned the task of collecting the evidence, logging it, and taking it back to the property room at the Kenton County Police Department's office.  *Id*. at CR 183, Trial Transcript, Testimony of Andrew Schierberg at p. 5-6.  Schierberg also created the inventory of the evidence that was seized at the property.  *Id*. at p. 7-8.  Friskey claims that this evidence seizure list shows that "Defendant Muse was k-114 seizing the CN Romarm rifle at the time of the seizure."  [R. 2 at ¶ 31; R. 65-1 at p. 13, R. 65-2 at ¶ 3 (claiming that Friskey "personally observed" Muse seize the RN-Romarm rifle)].  Although Friskey does not submit a copy of the inventory list in support of his claim, his criminal defense attorney attached a copy of the inventory to a motion to suppress filed on October 29, 2014.  *United States v. Ronnie Friskey*, 2:13-cr-012-DLB-CJS-1 (E.D. Ky. 2016) at CR 16-4.  It is true that the evidence inventory list prepared by Schierberg identifies "Officer K114" in conjunction with the CN Romarm rifle found in the black

---

[8] In his Declaration submitted in support of his motion for summary judgment, Muse affirmatively states that he did not transport the CN-Romarm rifle (referred to by Muse as "the AK-47 rifle) from Friskey's residence to the Kenton County Police Department's property room, nor did he have access to Kenton County's property room while the rifle was stored there.  [R. 59-2, Declaration of Muse at ¶ 2]

luggage on the living room floor, but the list offers no explanation of the significance of the officer listed with each piece of evidence, nor does it otherwise identify "Officer K114." *Id*. Friskey offers no other evidence to support his claim that Muse was "Officer K114" or that "Officer K114" was the officer who seized the CN-Romarm rifle on the day that it was removed from Friskey's property. However, even if he had, this fact simply is not probative proof supporting Friskey's conclusion that Muse removed the scope and/or the bipod from the rifle.

The remainder of Friskey's response points to Friskey's observations of Muse's discomfort while he was testifying in Friskey's criminal trial upon being shown the pictures taken of the CN-Romarm on the day it was seized with what appeared to be the scope and bi-pod attached. [R. 65-1 at p. 16 ("During this line of questioning Mr. Muse becomes very unnerved and unsettled as can be seen in the video audio of the trial. Mr. Muse is visually red in color in the face he is unable to sit still he knows that his plan has been foiled and is unable to recover. He then refuses to answer the questions on lines 21 and 22, and he concedes that the attachments were 'removed.'"); *Id*. (claiming that "Muse tries to cover-up his false testimony by resisting the defense questions and becomes hostile and nonsensical in his responses."); *Id*. at p. 25 ("Muse was given ample opportunity to explain he made a mistake, or that he did not remember the condition of the firearm, but that is not what he did. Instead, as has been stated before, Muse looked like he was guilty and turns red in the face. His motions look nervous and he became defensive.")] Friskey also speculates that Muse and the prosecutor conferred as to their trial strategy before the trial and that the prosecutor's questions on Muse's direct examination were "scripted." [R. 65-1 at p. 16] He also offers his own theories as to Muse's potential motivation to falsify the evidence against Friskey. [R. 65-1 at p. 14 ("He wants to get a conviction of the Plaintiff, he is intimately involved in the prior investigation, he is not a unbiased bystander, he was 'engaged in the often competitive

enterprise of ferreting out crime.'"); *Id*. at p. 25 ("There is this to consider, if Muse was to lose this case at trial it would most certainly affect his employment at the DEA or in law enforcement at any level. Therefore Muse has a very good reason to create a declaration to refute the allegation against him.")] However, none of this speculation is evidence, and "[c]onclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (citations omitted). *See also Banks v. Rockwell Int'l N. Am. Aircraft Operations*, 855 F.2d 324, 325 n. 1 (6th Cir. 1988) ("[A] motion for summary judgment may not be defeated by factual assertions in the brief of the party opposing it, since documents of this nature are self-serving and are not probative evidence of the existence or nonexistence of any factual issues.").

The fact remains that, although Friskey's complaint alleges that "Defendant Anderson L. Muse admitted to removing the attachments mentioned above from the CN Romarm rifle in advance of the trial, thus, creating a ploy along side his coconspirators to deliberately convince the jury based on this false testimony and altered evidence to convicted the Plaintiff of a crime," [R. 2 at ¶ 27], at no point – either in his complaint or in response to Muse's motion for summary judgment – has Friskey pointed to any affirmative evidence or testimony to offer any support for this conclusion whatsoever. Rather, Friskey offers only his own speculation and conclusions drawn from misleading citations to the record, including incomplete excerpts of testimony provided in his criminal trial. At most, Friskey suggests that, by virtue of the fact that Muse (along with other officers with the Kenton County Police Department and possibly the DEA) had access to the CN-Romarm rifle at least once from the date that it was seized through the date that it was introduced at trial, he must have altered the rifle by removing the scope and/or bipod. However, as explained above, none of the testimony or other evidence cited by Friskey lends even remote

support for this claim. Accordingly, Friskey fails to sustain his burden required to withstand Muse's motion for summary judgment on Friskey's fabrication of evidence claim. *See Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment.") (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

In summary, Friskey cannot show that he suffered from any deprivations of his liberty (or any other injury) as a result of the alleged alterations to the CN-Romarm rifle, which he must do to succeed on a tort claim for fabrication of evidence. *McDonough*, 139 S.Ct. at 2156. Nor has Frisky pointed to any probative evidence suggesting that Muse is the individual who removed the scope and bi-pod from the CN-Romarm rifle prior to trial, much less that he "knowingly fabricated" the CN-Romarm rifle before it was introduced into evidence at Friskey's trial. Rather, Friskey is left with only his own speculation and conclusory allegations, which are simply insufficient to withstand summary judgment. Because the Court finds that summary judgment is warranted on these grounds, it need not address Muse's arguments that Muse's trial testimony was unlikely to affect the minds of the jury or that Friskey is judicially estopped from claiming that Muse intentionally fabricated evidence in light of his counsel's statements to the contrary during Friskey's criminal trial.

For all of these reasons, Muse is entitled to summary judgment on Friskey's fabrication of evidence claim. Thus, Muse's motion for summary judgment [R. 59] will be granted and Friskey's fabrication of evidence claim will be dismissed with prejudice. As this is the only claim alleged in Friskey's complaint that remains pending, his complaint [R. 2] will be dismissed.

Accordingly, it is hereby **ORDERED** as follows:

1.  Plaintiff Ronnie Friskey's motion to stay the Court's consideration of Defendant's motion for summary judgment [R. 61], construed as a motion for discovery pursuant to Fed. R. Civ. P. 56(d), is **DENIED**.

2.  Defendant Anderson L. Muse's motion for summary judgment [R. 59] is **GRANTED**.

3.  Friskey's fabrication of evidence claim against Muse asserted in his original Complaint (the only claim that remains pending for adjudication in this case) [R. 2] is **DISMISSED WITH PREJUDICE**.

4.  All pending motions or requests for relief in this case are **DENIED AS MOOT**.

5.  This action is **STRICKEN** from the Court's docket.

6.  The Court will enter an appropriate Judgment.

This the 28th day of January, 2020.



**Signed By:**

**_William O. Bertelsman_** *WOB*

**United States District Judge**